UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Mohd Ismail Meraj,

          Petitioner

v.

Todd M. Lyons, et al.,

          Respondents[1]

Case No. 2:26-cv-00454-CDS-DJA

**Order Granting in Part the Petitioner's Petition for Writ of Habeas Corpus**

[ECF No. 1]

     Petitioner Mohd Ismail Meraj filed a petition for writ of habeas corpus on February 19, 2026. Pet., ECF No. 1. The respondents filed a response in March 2026. *See* Resp., ECF Nos. 9, 11.[2] Meraj filed a reply. *See* Reply, ECF No. 20. On May 11, 2026, Meraj filed a notice of the immigration judge's (IJ) March 18, 2026 decision, granting withholding of removal under the Convention Against Tortue Act (CAT), and granting withholding of removal from Afghanistan. Notice, ECF No. 21; IJ order, ECF No. 21-1. Having considered the pleadings, I grant in part the petition.

**I.    Background**

     Meraj is a citizen of Afghanistan. ECF No. 11 at 8. Around March 21, 2023, Meraj entered the United States without inspection by crossing the U.S. international border and he was arrested by the U.S. Border Patrol. ECF No. 1 at 7, ¶ 24; ECF No. 11 at 8. At the time of his entry and arrest, Meraj was served with a Notice to Appear (NTA) and Warrant of Arrest and remanded to the ICE Enforcement and Removal Operations' non-detained unit pending final disposition. ECF No. 11 at 8; NTA, Resp'ts' Ex. B, ECF No. 11-3; Arrest Warrant, Resp'ts' Ex. C, ECF No. 11-4. After being apprehended by ICE, he was released on bond and placed in removal

---

[1] Because Kristi Noem is no longer the DHS Secretary, the Clerk of Court is directed to substitute her with Markwayne Mullin. Likewise, because Pamela Bondi is no longer serving as the Attorney General, Todd Blanche, Acting Attorney General, is substituted in her place.

[2] Respondent John Mattos separately filed a response, taking no position on the habeas or bond relief sought. *See* ECF No. 9.

proceedings. ECF No. 1 at 7, ¶ 24. On January 16, 2026, Meraj went to a routine ICE check-in, and had been compliant with all reporting requirements. *Id.* at ¶ 27. During that check-in, ICE detained him without providing any explanation and informed him that his bond was revoked. *Id.*; Form I-830E, Resp'ts' Ex. D, ECF No. 11-5. He has been detained since his January 2026 arrest.

As a result, Meraj brings this petition asserting: (1) a violation of 8 U.S.C. § 1226(a); (2) violation of the Administrative Procedure Act (APA); and (3) a violation of his due process rights under *Mathews v. Eldridge. See* ECF No. 1. He seeks a writ ordering the respondents to immediately release him, or in the alternative, a writ ordering the respondents to reinstate the $5,000 bond previously granted on June 29, 2023. *Id.* at 29. Further, he seeks declaratory relief confirming that he was not paroled into the United States. *Id.* at 4, ¶ 10.

## II.    Legal authority

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

III.     Discussion[3]

The petitioner first argues that he is subjected to prolonged detention in violation of his due process rights under the Fifth Amendment and principles established in *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF No. 1 at 2. He asserts that his bond was denied by the IJ on the sole basis of *Matter of Li*, 29 I. & N. Dec. 66 (BIA 2025) and *Matter of Yajure Hurtado*, 28 I&N Dec.216 (BIA 2025), under the erroneous finding that he had been "paroled," rather than finding that he was released on his own recognizance and he was not detained at a port-of-entry. *Id.* at 20. Meraj argues that the IJ denied bond without considering the statutory factors in § 1226(a) and as well as the applicable regulations which deprived him of the individualized custody determination. *Id.* Meraj contends that the IJ's denial of jurisdiction constitutes an error of law and a violation of the INA. *Id.* He further asserts that by refusing to classify him under INA § 236(a) and denying him a bond hearing, the respondents are in violation of the INA, and this constitutes an unlawful application of § 1226(a). *Id.* at 21. Related to his first ground for relief, Meraj asserts that § 1225(b)(2)'s mandatory detention provision does not apply to noncitizens residing in the U.S., rather such noncitizens are detained under § 1226(a). *Id.* at 22.

The respondents argue that this case fits squarely into the framework of mandatory detention under 8 U.S.C. § 1225(b). ECF No. 11 at 2. To support their position, the respondents argue that Meraj is an applicant for admission under § 1225(a) because he entered the United States without admission or parole at El Paso, Texas in 2023. *Id.* at 2–3. The respondents further assert that Meraj's mandatory detention is guided by the decision in *Matter of Li*, 29 I. & N. Dec. 66 (BIA 2025), because Meraj was originally encountered by immigration officials immediately following illegal entry. *Id.* at 9. The respondents take the position that they previously operated under a narrower understanding of § 1225(b)(2)(A), however, the interpretation they now adopt

---

[3] The petitioner asserts that he is a member of the Bond-Eligible Class certified in *Baustista v. Santacruz*, 2025 U.S. Dist. LEXIS 231977 (C.D. Cal. Nov. 25, 2025). The respondents assert that Meraj's contention that he is a member of the Bond-Eligible Class has no binding effect upon this court. ECF No. 11 at 2. Because I grant Meraj's petition on other grounds, I do not address the merits nor reach a determination whether Meraj is a member of the Bond-Eligible Class action.

stands for the proposition that § 1225(b) requires detention for any applicant for admission, regardless of whether the applicant is taking affirmative steps toward admission. *Id.* at 13.

The respondents cite *Buenrostro-Mendez v. Bondi*, asserting that the court ruled that "unadmitted aliens apprehended anywhere in the United States are ineligible for release on bond, regardless of how long they have resided inside the United States." *Id.* at 15 (citing 166 F.4th 494 (5th Cir. 2026)). Though the respondents have again reshaped their interpretation of § 1225, the respondents' arguments remain unpersuasive.

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). On the other hand, Section 1226(a) states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole . . . .

8 U.S.C. § 1226(a). The plain language of these provisions indicates that both § 1225 and § 1226 govern the detention of non-citizens pending removal proceedings. The difference is that § 1225 provides for mandatory detention, whereas § 1226 allows for the release of the noncitizen on conditional parole or bond.

"A statute should be construed so that effect is given to all its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *Corley v. United States*, 556 U.S. 303, 314 (2009). "When interpreting a statute, the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (citation

4

omitted). But "the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (citation omitted). And "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted). The court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

As a threshold matter, § 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible **arriving aliens**; referral for hearing." 8 U.S.C. § 1225 (emphasis added). This title "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring). And § 1225(b)(2)(A) provides for the detention "of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Important here, the INA defines an "applicant for admission" as "[a]n alien present in the United States who **has not been admitted or who arrives in the United States.**" *See id.* at § 1225(a)(1) (emphasis added). The INA further defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *See id.* at § 1101(a)(13). The word "entry" is not defined in the INA. *See generally id.* at § 1101. But the dictionary definition of "entry" is "the right or privilege of entering" or "the act of entering." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/entry (last visited April 30, 2026). "Entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting *Matter of Pierre*, 14 I. & N. Dec. 467, 468 (BIA 1973)). The phrase "seeking admission" is also undefined in the statute. The dictionary definition of "seeking" is "ask[ing] for." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seeking (last visited April 4,

2026). And the word "seeking" "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) (citations omitted).

The respondents' interpretation of § 1225 would render the qualifier "seeking admission" in the statute entirely unnecessary and therefore improper. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted). Given Congress's decision to use different terms in § 1225—i.e., "applicant for admission" and "alien seeking admission"—I presume that Congress intended these phrases to mean different things. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute . . . different terms usually have different meanings." (citation omitted)); *see also Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025); 8 U.S.C. § 1225(a)(2)(3) (reasoning that Congress's decision to include the word "arriving," and references to methods of physical arrival, such as "stowaways" and "crewmen," in § 1225 shows Congress's intent to address noncitizens arriving "at a border or port of entry.").

In contrast, § 1226 is titled: "Apprehension and detention of aliens." 8 U.S.C. § 1226. "That Congress separated removal of arriving aliens," as set forth in § 1225, "from its more general section for 'Apprehension and detention of aliens,'" as set forth in § 1226, "implies that Congress enacted § 1225 for a specific, limited purpose." *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing *Dubin v. United States*, 599 U.S. 110, 122 (2023)). As the U.S. Supreme Court explained in *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), § 1225 is part of the "process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible," whereas "[s]ection 1226 generally governs the process of arresting and detaining . . . aliens [already living within the United States] pending their removal." *Id.* at 288. Thus, *Jennings* differentiated between noncitizens initially arriving to the United States who are governed by § 1225, and noncitizens already present in the country who are governed by § 1226. *Id.* at 288–89.

The respondents rely on a recent Fifth Circuit decision to support their position that Meraj is properly detained under § 1225. ECF No. 11 at 15–18 (citing *Buenrostro-Mendez*, 166 F.4th 494). But Meraj's is not actively seeking to lawfully enter the territorial limits of the United States because he already entered the United States in 2023 and was subsequently released on bond.

Because I find that Meraj's detention is governed by § 1226(a), not § 1225(b)(2)(A), his current detention under § 1225(b)(2)(A) violates his Fifth Amendment due process rights.[4] Accordingly, the petition for writ of habeas corpus is granted in part, so the petitioner is entitled to a constitutionally sufficient bond hearing under 8 U.S.C. § 1226(a). The respondents must provide him with a bond hearing within one week of the entry of this order.

IV.    Conclusion

IT IS HEREBY ORDERED that the petitioner's petition **[ECF No. 1] is GRANTED in part for the reasons set forth in this order.**

IT IS FURTHER ORDERED that the respondents are required to give the petitioner a bond hearing, and this bond hearing must occur by May 27, 2026.

IT IS FURTHER ORDERED that the parties must file a status report no later than June 3, 2026, advising the status of compliance with this order. **The status report must include the parties' position regarding whether this matter should remain open or closed.**

The Clerk of Court is kindly directed to substitute Markwayne Mullin for Kristi Noem and substitute Todd Blanche for Pamela Bondi.

Dated: May 20, 2026

_____
Cristina D. Silva
United States District Judge

---

[4] The remaining claims and requests for relief are denied without prejudice. This includes the petitioner's request for reasonable attorney's fees because such request is premature at this time.